Miller v. Hagerman Irrigation Co., 20 N. M. 604.

[No. 1745, August 30, 1915.]

# MILLER v. HAGERMAN IRRIGATION CO.

## SYLLABUS BY THE COURT.

1. A corporation organized for the purpose of collecting water from the public streams of the state and conveying and delivering the same to such consumers as will contract with it for a permanent water right for irrigation purposes cannot be compelled to carry water for hire for a person who has not contracted with it for a water right, and who demands the carriage of water from a source other than that which the corporation employs.    P. 610

2. Section 5718, Code 1915, interpreted, and held to authorize, by its terms, the delivery of water, wheresoever derived, into a senior ditch and diversion thereof, less loss by seepage and evaporation, at any point above or below the point of delivery into the senior ditch, to satisfy an appropriation by the person so delivering said water into such senior ditch.
    P. 612

3. Said section, in so far as it authorizes the delivery of water from a junior ditch into a senior ditch, and the diversion of the water above or below the point of delivery into the senior ditch, without compensation to the owner of the senior ditch. is violative of article 2, § 20, of the Constitution, in that it authorizes the taking of private property without just compensation. In so far as said section authorizes the delivery into and diversion from streams or water courses of water derived from other sources, it is unobjectionable upon this ground.
    P. 613

Appeal from District Court, Chaves County; McClure, Judge.

Suit for mandatory injunction by J. M. Miller against the Hagerman Irrigation Company, a corporation. From a judgment for plaintiff, defendant appeals. Reversed and remanded, with directions to dismiss.

Miller v. Hagerman Irrigation Co., 20 N. M. 604.

WILLIAM C. REID and JAMES M. HERVEY of Roswell, for appellant.

The court erred in holding that sec. 60, c. 49, Laws 1907, requires that defendant should carry water of plaintiff in its canal, and erred in holding that said act, when so construed, is constitutional.

Appellant is not a public service corporation of such a character that it must carry water without compensation.

Slosser v. Salt River Valley Canal Co., 65 Pac. 332; Paxton & Hershey Irr. Canal & Land Co. v. Farmer's & Merchant's Irr. & Land Co., 45 Neb. 884, 64 N. W. 343, 29 L. R. A. 853, 50 Am. St. R. 585; Clifford v. Larimer, 11 Pac. (Ariz.) 397; Wyatt v. Larimer, 33 Pac. 144; Cole v. Logan, 33 Pac. 568; Harp v. Choctaw O. & G. Ry. Co., 118 Fed. 169; See also: Wiel on Water Rights, vol. 2, sec. 1261; Lindsey Irrigation Co. v. Mehetens, 32 Pac. 802; Hildrath v. Montesto Water Co., 72 Fed. 395; Town of West Hartford v. Board of Water Commissioners, 68 Conn. 323, 36 Atl. 786 (1896); Pocatello Water Co. v. Standley, 7 Idaho, 155, 61 Pac. 518 (1900); Rogers Park Water Co. v. Chicago, 130 Ill. App. 35 (1907); Independent Sch. Dist. v. Le Mars Water & Light Co., 131 Iowa, 14, 107 N. W. 944, 10 L. R. A. (N. S.) 859 (1906); City of Topeka v. Topeka Water Co., 58 Kans. 349, 49 Pac. 79 (1897); Haugen v. Albina Light & Water Co., 21 Oreg. 411, 28 Pac. 244, 14 L. R. A. 424 (1891); Hyndman Water Co. v. Borough of Hyndman, 7 Pa. Super. Ct. 191 (1898.)

To sustain the trial court would be to take the property of appellant without compensation, in violation of his constitutional rights.

Secs. 363, 364, 365, Lewis on Eminent Domain; sec. 18, art. 2, State Constitution; note to Chicago, etc., Ry. Co. v. Morehouse, 88 Am. St. R. 927; 88 Am. St. R. 928.

GIBBONY & EPSTEIN of Roswell, for appellee.

When supported by any substantial evidence findings of fact will not be disturbed on appeal.

Richardson v. Pierce, 14 N. M. 334, 93 Pac. 715; Eagle Mining Company v. Hamilton, 14 N. M. 271, 94 Pac. 949; Hancock v. Beasley, 14 N. M. 239, 91 Pac. 735; Candelaria v. Miera, 13 N. M. 360, 84 Pac. 1020; Ortiz v. Bank, 12 N. M. 519, 78 Pac. 527; Marquez v. Land Grant Co., 12 N. M. 445, 78 Pac. 40; Carpenter v. Lindauer, 12 N. M. 388, 78 Pac. 57; Rush v. Fletcher, 11 N. M. 555, 70 Pac. 559; Romero v. Coleman, 11 N. M. 533, 70 Pac. 559; Gale & Farr v. Salis, 9 N. M. 211, 66 Pac. 520.

All the duties of the appellant corporation are public. Statutes having the same general purpose as the one under consideration here have been upheld.

Nash v. Clark, 27 Utah, 158, 198 U. S. 361; Oury v. Goodwin, 26 Pac. (Ariz.) 376; Leavitt v. Lassen Irr. Co., 106 Pac. 404; McCrary v. Beaudry, 7 Pac. 264.

## OPINION OF THE COURT.

PARKER, J.—This is a suit for a mandatory injunction brought by plaintiff, who is appellee here, against the defendant, appellant, commanding the defendant to receive into its canal a certain amount of water and to carry the same in said canal a distance of about 1½ miles, and to there deliver it to the plaintiff, less that portion thereof lost by seepage and evaporation. The defendant is a corporation organized and existing under the laws of the state of New Mexico. It is alleged in the complaint that the defendant owns and controls a canal known as the Northern Canal, running from the junction of the North Spring river and the Rio Hondo in Chaves county, N. M., about 35 miles south in said county, and that said company is incorporated for the purpose of carrying water to the farmers who own lands contiguous to the said Northern Canal; that as such, said corporation is a public service corporation, compelled under the law to carry water for a resonable compensation for parties owning water

and land contiguous to its said Northern Canal; that the plaintiff is the owner of a certain water right which he purchased from the farmers who produced the same by the construction of a drainage ditch running through described sections of land in Chaves county, and which produces a large volume of water, the uses of which plaintiff has purchased; that the said drainage ditch has for the past year and a half and since its construction emptied into the said Northern Canal at about the center of section 22 in township 11 south of range 25 east in said county, by and with the consent of the defendant; that the plaintiff has land lying contiguous to the said Northern Canal on the east side thereof, and desires to carry the water from said drainage ditch to and upon his land aforesaid, and has repeatedly asked the said company to either permit him to construct a headgate, or to construct one itself, at plaintiff's cost, by which his water from his said drainage ditch could be turned onto lands of the plaintiff and be taken from said Northern Canal at a distance of about 1½ miles from the point where it is delivered into said canal; that the defendant has failed and refused to permit plaintiff to construct the headgate as aforesaid and has failed and refused to construct such headgate, although plaintiff has offered to pay all expenses of such construction, and has refused and neglected to set a price or make terms upon which it will carry and deliver said water, although plaintiff has offered to pay all reasonable expense and costs of such carriage, and all other reasonable and equitable charges necessary to deliver such water; that the plaintiff has offered and still offers to construct at his own expense suitable headgates, flumes, and measuring devices as may be determined by the state engineer at the point of intake of said water from his said ditch into the said canal and at the point of discharge therefrom, and has offered to take from the said canal only so much water as he puts into said canal, less a reasonable deduction for evaporation and seepage, to be determined by the state engineer; that the plaintiff has offered and continues to offer the defendant a reasonable charge for any and all things which

said company would be necessarily required to do by reason of the carriage of said water; that the said Northern Canal of defendant flows in a general southerly direction past the lands of the plaintiff, and plaintiff's water right is developed on the west side thereof and empties into said canal through its west bank; that the said Northern Canal has space and room, within its banks as now built and constructed to carry a much larger quantity of water than there is for carriage therein; and that to be compelled to flume his water over the said Northern Canal or syphon the same under the said canal and down along its banks to his said land on the east side of the said canal would entail a large and unnecessary expense upon the plaintiff.

The defendant answered, and by way of new matter alleged that it is a private corporation organized for the purpose of appropriating waters from the public streams of New Mexico, and conveying the water so appropriated to a great distance and below the lands of plaintiff, where said defendant delivers said water to only those persons who have purchased of it water rights, and that it does not act as a carrier of water for hire, and that it does not charge for the carriage of water, but charges the persons who have acquired a water right of it a fixed charge for maintenance; that it does not deliver any water to any person in the neighborhood or vicinity of plaintiff's lands; that the plaintiff's demand that it carry water for him does not offer to the defendant any business within the class of business for which it was organized, or any class of business which it has ever accepted or prepared itself to trasact; that plaintiff does not belong to any class of water users to which the defendant furnishes or has at any time furnished water; that it takes water from the Hondo river, and that at times said river furnished water to the full limit or capacity of said Northern Canal, and that the character of said Hondo water is such that it makes it very valuable, especially in flood times, to the water users under the canal of defendant; that if it was compelled to carry water for private individuals, such as plaintiff, such burden would seriously hinder the defend-

ant in carrying out the business for which it was organized. The plaintiff replied, denying the allegations of new matter in the answer, except the allegations as to the character of the defendant corporation and the scope of its purposes. The case was brought to trial, and resulted in a judgment for the plaintiff. The court made several findings of fact and conclusions of law, and his twelfth finding is as follows:

"(12) The court further finds that the defendant charges and received from its customers and water users to whom it has sold water rights for the services which it renders in delivering an amount sufficient to irrigate their lands the sum of $1.25 per acre per season or per year, which the court also finds to be a reasonable charge for said services. The court therefore concludes that when the plaintiff herein, under the direction of the state engineer, shall construct and maintain at his own expense suitable measuring devices at the points of delivery and diversion of his said water as mentioned in the foregoing findings, and when at his own expense he shall cause the state engineer to determine the amount or percentage of plaintiff's water to be deducted at the point of delivery from the amount received into said canal, and shall pay or tender to the defendant, the amount per annum hereinbefore found to be a reasonable charge for carrying and delivering water from its said Northern Canal, then the plaintiff will be entitled to have delivered to him upon his said land in section 35 such quantity of water as he purchases and delivers into defendant's said Northern Canal at or near the center of said section 22, less the amount of loss on account of evaporation and seepage, and that when the plaintiff complies with said conditions he is entitled to and shall have an injunction restraining the defendant from carrying his

said water past his said land in said section 35 and delivering and disposing of the same elsewhere and to other persons."

The defendant excepted to this finding upon the ground that the relief sought in the complaint and attempted to be given by the court was not equitable in its nature, and that the defendant cannot be enjoined as attempted under the proposed decree, but, if the plaintiff had any remedy in the premises, under the state statute or by reason of the defendant being a public service corporation, that the remedy was by mandamus, and not by injunction. This point was also raised by demurrer. The defendant requested findings also to the effect that, in order to allow the plaintiff to use the Northern Canal upon the same terms as other water users, the plaintiff was required to pay for what is called a water right in the sum of $50 per acre for each acre irrigated by him. This was refused by the court. The defendant asked a further finding which was made by the court to the effect that the service asked by the plaintiff is not of the character of service which the Northern Canal or the Hagerman Irrigation Company is now rendering to any other person; that is to say, said Northern Canal does not carry the water for any other person, but only furnished water to water right holders. The court found against the defendant as to the carrying capacity of the Northern Canal, and found that it was sufficient in its present condition to carry the water of plaintiff with safety. Counsel for defendant contests this finding as not supported by any evidence, but, in view of our conclusion upon the main point in the case, it requires no consideration. Neither does defendant urge here its objection to the form of the remedy employed by plaintiff.

[1] The underlying question in the case is whether the defendant corporation, in the circumstances shown, is required to receive and carry for hire plaintiff's water. It is to be observed that the kind of service by defendant sought from plaintiff is not the kind of service for which the defendant corporation was organized, nor the kind of

service it has rendered, nor the kind of service for which it is equipped to render. It appears that this corporation was organized to appropriate water from the public streams of the state, and to convey the same to suitable places, and to deliver or sell the same to such persons as would buy the same by way of permanent water rights, at a price to be agreed upon as a matter of contract in each instance. It was not organized as a carrier of water generally, from whatever source derived, and for whomsoever might apply for the service, but it was organized to collect and convey water to the consumer, and there deliver it to such as would contract for it and apply it to a beneficial use, and has never done otherwise and is not equipped to do otherwise. Assuming, as is urged by counsel for plaintiff, that this service is a public service, and that the service demanded of the defendant by the plaintiff is likewise a public service, it does not at all follow that defendant must render the same. While the service in both cases is the carriage of water, they are entirely dissimilar in character and extent. The unsoundness of plaintiff's position in this regard, which is that the service in which the defendant is engaged is a public service, and the service demanded by plaintiff is a public service, therefore it must render it, may be illustrated as follows: A corporation is organized for the purpose of furnishing water or electric lights for a city or town called A. This would be a public service. The plant for the production of the water or electrical energy is located outside of the town or city of A, and the water main or wire conveying the electrical energy to A passes by the edge of the town or city of B. B demands water or light service, which, of course, would be a public service. Therefore the corporation must furnish the service. The absurdity of such a proposition is so apparent that the contention needs little comment.

We do not wish to be understood as deciding that the service demanded by the plaintiff is a public service, but what we do decide is that in any event the defendant may not, under the circumstances, be compelled to render the same upon the ground that it is a public service corpora-

tion.  That a corporation of this kind may limit its service to a class which it is designed to serve, see Slosser v. Salt River, etc., Co., 7 Ariz. 376, 65 Pac. 332. It may classify the public and supply water only to the owners of a restricted district. Leavitt v. Irrigation Co., 157 Cal. 82, 106 Pac. 404, 29 L. R. A. (N. S.) 213; 2 Weil, Water Rights (3d Ed.) § 1281.  It needs no citation of precedent for the general proposition that no public service corporation can be compelled, as is sought in this case, to render service entirely different in character from that for which it was organized.

[2].  Counsel for plaintiff, however, rely also upon the provisions of section 60 of chapter 49, Laws of 1907 (section 5718, Code 1915), in support of the decree.  The statute provides:

> "Where the rights of others are not injured thereby, it shall be lawful for the owner of any reservoir, canal, or other work, to deliver water into any ditch, stream, or water course, to supply appropriations therefrom and to take in exchange therefor, either above or below such point of delivery, a quantity of water equivalent to that so delivered, less a proper deduction for evaporation and seepage to be determined by the state engineer: Provided, such owner shall, under the direction of the state engineer, construct and maintain suitable measuring devices at the points of delivery and diversion."

Counsel for appellee argues that the service demanded can be rendered without injury to defendant or its water right owners, and the court so found.  Counsel shows the tender by plaintiff of the performance by him of all of the requirements of the statute.  Counsel for defendant, however, advance two propositions under this statute, as controlling against plaintiff's claim, as follows:  (1) Plaintiff does not come within the terms of the statute; (2) if he does come within the terms of the statute, the same is unconstitutional.

The argument in support of the first proposition is that the words in this statute "to supply appropriations therefrom" restricts its application to those cases where the appropriation of the water is made by means of the ditch into which the water is delivered. The argument proceeds that plaintiff's appropriation is made, not by means of the Northern Canal, the property of defendant, but from the drainage ditch which empties into the Northern Canal. We do not so understand this statute. It is clear, we think, the statute means that, where an appropriation is made by any means, the owner may divert the water into any existing ditch, and can take it out, less loss by seepage and evaporation, either above or below the point of delivery into the existing ditch, to supply his appropriation.

[3] A more serious question is presented by the second proposition above stated. It is to be observed in this connection that this statute makes no provision whatever for any compensation to the owner of the existing ditch into which waters are delivered from a junior ditch. The carriage of such waters in the senior ditch is, by the terms of the statute, to be gratuitous. The only restriction upon the right of the junior owner to divert water into the senior ditch is that he shall, under the directions of state engineer, construct and maintain suitable measuring devices at the points of delivery and diversion. He is required by the statute to make no contribution whatever towards the cost of the construction of the senior ditch, nor the cost of its maintenance.

It is a universal provision, both of the federal and state Constitution, that property of the citizen shall not be taken without just compensation. See article 2, § 20, State Constitution. Whether the taking by the plaintiff of the property of the defendant is the taking thereof for a private or a public use it is unnecessary for us to decide. It nevertheless remains true that this statute authorizes the taking of this property right of the defendant without any compensation whatever. This may not be done.

It is to be regretted that we are compelled to come to this conclusion on account of the great importance of the subject and the effect it will have upon the irrigation systems of the state. It may well be conceded that the state has power to compel the owner of a ditch to permit the carriage of water therein belonging to other persons upon the ground that the duty and privilege of carrying water for irrigation purposes is a public duty and privilege, and may be exercised only by the permission of the state and upon such terms as may be prescribed. But nevertheless it remains true that the private property of the citizen may not be taken without provision for his compensation therefor. In this connection it is to be understood that this holding is for the purposes of this case and like cases only, where the question is as to the right to use a senior ditch, constructed and maintained at cost to the owners, without compensation, and has no application to cases where the right to use natural streams and water courses is involved. In the latter class of cases we can see no objection to the statute.

For the reasons stated, the judgment of the lower court will be reversed, and the cause remanded, with instructions to dismiss the bill of complaint; and it is so ordered.

ROBERTS, C. J., and HANNA, J., concur.