(February 14, 1912.)

THOMAS MELLEN et al., Respondents, v. GREAT WEST-ERN BEET SUGAR CO. et al., Respondents, and D. C. BRADLEY et al., Appellants.

[122 Pac. 30.]

WATER RIGHTS—PRIORITY OF WATER RIGHT—CONSTITUTIONAL CONSTRUC-TION—SETTLEMENT AND IMPROVEMENT—ABANDONMENT OF RIGHT.

(Syllabus by the court.)

1. Under the provisions of sec. 5, art. 15, of the constitution, whenever more than one person has settled upon or improved land with a view of receiving water for agricultural purposes under a sale, rental or distribution thereof, as among such persons priority in time gives superiority of right.

2. The settlement or improvement upon land with a view to receiving water for agricultural purposes, as provided for in sec. 5, art. 15, of the constitution, means an actual settlement or an actual improvement thereon, and a constructive settlement will not meet the purpose or requirements of the constitution.

3. One who purchases a water right from a canal or ditch company that has made its appropriation for the purposes of sale, rental

or distribution thereof, acquires no priority until he complies with the provisions of sec. 5, art. 15, of the constitution and settles upon or improves the land with a view of receiving water for agricultural purposes, and when he does so settle upon land or improve it with diligence and good faith, he is entitled to have his priority date from the time of making such settlement or beginning such improvement.

4. One who actually settles upon or improves land lying under a canal or irrigation ditch with a view to receiving water therefrom for agricultural purposes, is entitled to a priority over one who has previously purchased a water right from such canal company but who has failed to either settle upon or improve the land as required by the provisions of sec. 5, art. 15, of the constitution.

5. Where a land owner has appropriated and diverted water from a natural stream for the irrigation of his land and thereafter enters into an agreement with an irrigation company, whereby he consents and agrees to relinquish and waive his water right from the stream and allow the irrigation company to collect the waters of the stream into reservoirs, and the company agrees in consideration thereof to deliver water to such land owner from the reservoirs and canal system, the priority of the original appropriator should properly date from the time of his first appropriation, diversion and application of the water to a beneficial use.

6. Evidence examined and *held* that although conflicting, there is sufficient evidence in the record to support a finding that certain appropriators of water from a natural stream had abandoned their water rights and ceased to use and apply the water to a beneficial purpose.

APPEAL from the District Court of the Fourth Judicial District for Elmore County. Hon. Edward A. Walters, Judge.

Action to have determined and decreed certain water rights and the priorities to the use of the waters from the Great Western Beet Sugar Company's irrigation system. From a judgment and decree certain defendants appeal. *Affirmed.*

W. C. Howie, for Appellants.

Persons entitled to the use of water may change the place of diversion or place where it was used. (*Wilterding v. Green,* 4 Ida. 773, 45 Pac. 134; *Ramelli v. Irish,* 96 Cal. 214,

31 Pac. 41; *Hard v. Boise City Irr. & Land Co.,* 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407.)

Waters appropriated for agricultural purposes under a sale or rental are deemed exclusively dedicated to such use, and when once sold or rented to a person settling upon land for agricultural purposes with a view of receiving such water, such person cannot thereafter be deprived of the annual use of the same when needed on compliance with the equitable terms as to the quantity used and times of use.   (*Gerber v. N. & M. Irr. Dist.,* 16 Ida. 1, 100 Pac. 80.)

Settlement dates from the time the applicant determined to settle on the land at the time he examined the boundaries. (*McDonald v. Taylor,* 89 Cal. 42, 26 Pac. 595.)

W. C. Howie, and Richards & Haga, for Appellant Bradley.

This court in interpreting such contracts has held them binding, and further held that the company must recognize them and furnish water to the water right holders thereunder. (*More v. Elmore County Irr. Co.,* 3 Ida. 729, 35 Pac. 171; *Bray v. Elmore County Irr. Co.,* 4 Ida. 685, 44 Pac. 432.)

Abandonment is purely a question of intent coupled with an actual relinquishment of the right.   (*Welch v. Garrett,* 5 Ida. 639, 51 Pac. 405, 19 Morr. Min. Rep. 193; *Miller v. Wheeler,* 54 Wash. 429, 103 Pac. 641, 23 L. R. A., N. S., 1065.)

Throughout the testimony there is ever present and clearly manifested on the part of appellant and his predecessors in interest a determination and intention to at all times protect and claim the amount of water originally appropriated for these lands and the rights which these lands had acquired to the use of water from the reservoir system under the agreements above referred to.   (*Conant v. Jones,* 3 Ida. 606, 32 Pac. 250; *Hall v. Blackman,* 8 Ida. 272, 68 Pac. 19.)

J. G. Watts, for Respondents.

The purpose of the appropriator is shown by his acts and by the circumstances surrounding his possession of the water. (*Toohey v. Campbell,* 24 Mont. 13, 60 Pac. 396.)

To entitle one to a decree of priority as provided in sec. 5, art. 15 of the constitution, two steps must be taken: first, the land owner must, by contract with the company, acquire a right to the use of water from the system; second, he must, by settlement or improvement, actually dedicate the water to his land. (*Knowles v. New Sweden Irr. Dist.*, 16 Ida. 217, 101 Pac. 81; *Combs v. Agricultural Ditch Co.*, 17 Colo. 146, 31 Am. St. 275, 28 Pac. 966; *Hard v. Boise City Irr. & Land Co.*, 9 Ida. 602, 76 Pac. 331, 65 L. R. A. 407.)

Wyman & Wyman, and Martin & Martin, for certain Respondents, cite no authorities on points decided.

AILSHIE, J.—This action was instituted for the purpose of determining the respective rights of the parties to the use of water from a reservoir system in Elmore county known as the Great Western Beet Sugar Co. system, supplied by three reservoirs impounding waters in what are known as Little Camas, Long Tom and Rattlesnake reservoirs, and to determine the respective priorities of the parties to the use of water from that system.

It appears that the Rattlesnake reservoir was built in the years 1891 and 1892, and that the Long Tom reservoir was built in 1906 and the Little Camas reservoir at a still later date. Certain of the defendants have appealed from the judgment and decree, presenting two classes of claimants to the use of water from the irrigation system. It seems that prior to the construction of any of these reservoirs there were certain entrymen, living along what is known as Canyon creek, and who had appropriated water from that stream and Rattlesnake creek dating as far back as 1883, who had from time to time diverted water from the streams for the purpose of irrigating and flooding their lands for raising wild hay and grasses. The irrigation which had been carried on by these people was done by means of dams in the streams and diverting water into ditches and furrows which carried it out over the grass and hay lands, in varying amounts and covering varying areas from year to year up to the time of

the building of the first reservoir. In the springtime a considerable volume of water came down this stream, but later in the season, as early as June or the first of July, the water would become so low that very little, if any, reached the lands now owned by the appellants. This was due chiefly to the fact that after leaving the mouth of the canyon the water had to flow down over a sandy, gravelly and porous formation for a number of miles before reaching the lands to be irrigated, and as a consequence seepage, percolation and evaporation consumed practically all the water of the stream during the hot summer months. When the original promoter of the reservoir and irrigation system started upon the construction of the reservoir system, he entered into an agreement with the owners of these lands to the effect that they should surrender and release all their right, title or interest in and to the waters of this stream, and in consideration thereof the company, known as the Elmore County Irrigation Co., should furnish them perpetual water rights for their lands. While the contract did not recite the extent of the water right the land owners were relinquishing, nor did it describe the extent of the perpetual water right to be received, the only rational and just conclusion to be gathered from that contract is that the land owners were to receive water for the irrigation of the same lands that they had previously irrigated from the natural stream, and that this contract was made only for the purpose of enabling the reservoir company to collect all the waters flowing in the stream instead of allowing them to run down the stream during the flood season, and in consideration thereof they should furnish water through the canal system sufficient to irrigate the same lands which had previously been irrigated from the waters of the stream.

The second class of appellants here are those who purchased water rights from this new reservoir and irrigation company. We shall deal with this latter class of appellants first. They were among the first purchasers of water rights from the irrigation company, but they did not actually *settle upon or improve* their lands until after subsequent claimants to water rights entered upon their lands, cleared them and

diverted and applied water to such land. The appeal, so far as this class of appellants is concerned, depends upon the construction to be placed on sec. 5, art. 15, of the constitution, which provides as follows:

"Whenever more than one person has settled upon or improved land with the view of receiving water for agricultural purposes, under a sale, rental or distribution thereof, as in the last preceding section of this article provided, as among such persons priority in time shall give superiority of right to the use of such water in the numerical order of such settlements or improvements; but whenever the supply of such water shall not be sufficient to meet the demands of all those desiring to use the same, such priority of right shall be subject to such reasonable limitations as to the quantity of water used and times of use as the legislature, having due regard both to such priority of right and the necessities of those subsequent in time of settlement or improvement, may by law prescribe."

The appellants contend that the purchase of arid land under an irrigation or canal system and the purchase of a water right for such land in legal effect works an appropriation and dedication of the water to such land, and that these two acts constitute a compliance with the foregoing provision of the constitution, in that they amount to a constructive settlement upon such lands.

It will be observed that the foregoing provision of the constitution as to settlement and improvement of land is intended to be made the test in establishing the priority of the several claimants to water for irrigation purposes. This must of necessity be an actual settlement or an actual improvement. While there is such a thing as a constructive settlement on land for some purposes of the law, we know of no such thing as a constructive improvement of land, but where the very thing to be determined renders it necessary that the settlement be an actual settlement,—a *possessio pedis* as distinguished from a constructive possession,—then it must be actual and not an imaginary one. And the same is true with reference to improvement. It is by these facts that

the court is to determine which of the several claimants to priority in the use of water shall be awarded the better and prior right.

Appellants cite *McDonald v. Taylor*, 89 Cal. 42, 26 Pac. 595, in support of the contention that constructive settlement may suffice. That case is not in point here, for the reason that the appellant in the McDonald-Welch case made no pretense to having made a settlement on the land prior to the settlement made by the respondent.

The framers of our constitution evidently meant to distinguish settlers who procure a water right under a sale, rental or distribution from that class of water users who procure their water right by appropriation and diversion directly from the natural stream. The constitutional convention accordingly inserted secs. 4 and 5, in art. 15, of the constitution, for the purpose of defining the duties of ditch and canal owners who appropriate water for agricultural purposes to be used "under a sale, rental or distribution" and to point out the respective rights and priorities of the users of such waters. It was clearly intended that whenever water is once appropriated by any person or corporation for use in agricultural purposes under a sale, rental or distribution, that it shall never be diverted from that use and purpose so long as there may be any demand for the water and to the extent of such demand for agricultural purposes. And so sec. 4 is dealing chiefly with the ditch or canal owner, while sec. 5 is dealing chiefly with the subject of priorities as between water users and consumers who have settled under these ditches and canals and who expect to receive the water under a "sale, rental or distribution thereof." The two sections must therefore be read and construed together.

It is plain that the framers of the constitution in the adoption of sec. 5 meant to date the priorities of claimants from the time of "settlement or improvement." That is to say, that one who improves his land with a view to receiving water for the irrigation thereof and who proceeds with diligence and in good faith to put his land in condition for irrigation, is entitled to have his priority date from the

time he commenced to make such improvement. So, also, one who actually settles upon such land and proceeds with diligence and in good faith to prepare his land for irrigation is entitled to have his priority date from the time of such settlement. One who purchases a water right for his land from such canal or ditch company is placed upon exactly the same footing as any other user of water under that canal system. His priority cannot date from the time of his purchase of such water right, but must date from the time he either settles upon the land or from the time he begins to improve the land for irrigation.

So it will be seen that the purchaser of a water right from a canal company is in no better condition than he would have been had he not purchased such right, for the reason that he still is obliged to either settle upon or improve the land the same as one who has never purchased a water right.

The effect of these two sections of the constitution was discussed somewhat by the members of the constitutional convention. Mr. Gray and Mr. Hampton both protested that they did not understand the purpose of the committee in drafting sections 4 and 5, and that they did not understand the meaning intended to be conveyed thereby. The president of the convention, Mr. Claggett, on the other hand, seemed to have a very clear understanding of the provisions and was the only one who spoke in favor of their adoption, and his discussion and explanation seems to have been accepted by the majority of the convention as they voted down the amendments presented by Gray, Hampton and Poe, and adopted the provisions as they now stand. We quote the following as a part of the debate and proceeding had in this connection:

"Mr. Claggett: I will state to the committee that the heart of this bill lies in sections 4 and 5 as a practical measure. This portion of section 4 amounts to this: that whenever these canal owners—if the gentleman will see, 'for agricultural purposes under a sale, rental or distribution thereof,'—whenever one of these large canals is taken out for the purpose of selling, renting or distributing water,

or the appropriation is made hereafter for that purpose, and that after that has once been done, inasmuch as priorities will immediately spring up along the line of that canal, even before the canal is located; for instance, if a company should start in here to take a large quantity of water out to supply a given section of country, and should appropriate or give notice to the world that they were appropriating it for agricultural purposes 'under a sale, rental or distribution thereof,' then immediately, just as soon as the ditch was surveyed, people would come in and begin to locate farms and improve them right along the line of that ditch; and therefore it is necessary in order to protect them, inasmuch as they have spent this money in settling there under a promise, which was made by the company, that the water should be used for agricultural purposes, that the water should not be allowed to be diverted from that purpose and applied to the running of manufactories or anything else of that sort.

"Mr. Gray: Suppose he won't pay for it.

"Mr. Claggett: It is dedicated to the use, and when it has once been sold to any one particular party in one year, then he shall have the right to demand it annually thereafter upon paying for it. . . . .

"Mr. Claggett: Mr. Chairman, both of these sections apply to the same condition of things. Neither one of them applies to a case of a water right where a man takes water out and puts it upon his own farm. It applies to cases only as both sections specify, say to those cases where waters are 'appropriated or used for agricultural purposes under a sale, rental or distribution.' The first section protects the person who comes in, by making it 'an exclusive dedication' to agricultural uses after it has been so appropriated and so used."

These conclusions necessarily result in an affirmance of the judgment as to those appellants who rely on contracts for water rights from the irrigation and canal company, and who do not connect themselves with an original appropriation of the water from the natural stream.

This brings us to a consideration of the question as to the rights of those appellants who claim by reason of original locations made by themselves or their predecessors from the waters of Canyon and Rattlesnake creeks. The court's findings and conclusions of law seem to be based on the theory that if these appellants or their predecessors located on the land prior to the construction of the reservoir system, that they did not therefore settle upon or improve the lands ''with the view of receiving water'' from the reservoir system ''for agricultural purposes under a sale, rental or distribution thereof.'' This may be literally and technically true as a fact, and not be so as a legal conclusion. If these claimants or their predecessors settled upon and purchased their respective lands and appropriated and diverted water from Canyon creek for the purpose of irrigating such lands, and subsequently agreed with the irrigation company to waive and relinquish their water rights in consideration of receiving similar rights from the reservoir and irrigation system, then and in that case the water rights from the irrigation system are merely a continuation of the original appropriation, and their priority should date from the original diversion and appropriation. In this respect, we think the court's legal conclusions were entirely erroneous.

It appears quite conclusively that the original appropriators of the waters of Canyon and Rattlesnake creeks prior to the construction of the reservoir system continued from year to year to divert and apply water from the stream in varying quantities up to the time that they had their agreement or understanding with the irrigation company and the construction of the first reservoir. The evidence, however, is extremely conflicting and uncertain as to the use or application of water subsequent to 1891, and on this point the court finds as follows: ''That ever since the building of said reservoir, they have ceased to use any of said waters so previously owned or claimed by them from said Canyon or Rattlesnake creeks under said rights except at such times early in the spring, when a larger quantity of water flows down Canyon creek than can be carried by the supply canal

from said creek to said reservoir, and the only waters used by them or their predecessors in interest from said reservoir are such as they have acquired by use as renters or under conveyance of water rights by deed from the owners of such reservoir.''

If we were weighing the evidence in this case as a court of original jurisdiction, we are inclined to think we should find from the evidence in the record that some of these claimants have continued to receive and apply small quantities of water with sufficient frequency to entitle them to priorities for certain small portions of these tracts of land, but with the evidence conflicting as it is and the trial court having found against the appellants, we do not feel justified in disturbing the findings and judgment in this respect. It must be admitted that the use of water under these appropriations or from the canal system since 1898 has been intermittent and infrequent and with apparently less purpose of applying it to a beneficial use than to keep alive, if possible, the appropriation and priority. We therefore conclude that the judgment should be affirmed as to this class of appellants.

There are two other appellants, Smith and Moyses, who complain of the refusal of the court to decree them the priority to water for a seventy-acre tract of land known as a part of the Commodore Jackson desert entry, on which the town of Mountainhome is built. They claim that this was taken as a desert entry in 1877 and that water was appropriated for it from Canyon creek in 1879. It is quite clear that water was conveyed to a large portion of this 320-acre desert entry, but the land here in question lies to the west side of the old townsite of Mountainhome and west of the railroad track, and it is extremely doubtful if any water whatever has ever been delivered from this water right to this particular tract of land. It is equally evident that if any water ever had been applied to this land, it was many years ago and that such water right had long since been abandoned.

The record in this case is long and tedious, and we have been obliged to go through the entire record, and from such examination have reached the foregoing conclusions. The judgment should be affirmed as to all the appellants, and it is so ordered. Costs awarded in favor of respondents.

Stewart, C. J., and Sullivan, J., concur.