[Civil No. 286.   Filed January 17, 1891.]

[73 Pac. 400.]

F. M. HARGRAVE, Plaintiff and Appellant, v. LON D. HALL et al., Defendants and Appellees.

1. IRRIGATION—CONTRACTS—COMPANY REGULATIONS—JUDGMENT—PRORATING WATER.—Where an irrigation company has contracted to furnish a water-user for all time water sufficient to irrigate one hundred and sixty acres of land, and such water-user is the first to purchase and the first to beneficially use the water upon the land, it is error for the court to decree that he shall be subject to the same rules and shall prorate his water with parties who purchased at subsequent times.

2. SAME—TRESPASS—INJUNCTION—DAMAGES.—Where an irrigation company, without justification, has destroyed a water-user's head-gates and damaged his crops he is entitled to an injunction, damages and costs.

APPEAL from a judgment of the District Court of the Second Judicial District in and for the County of Maricopa. William W. Porter, Judge. Reversed.

The facts are stated in the opinion.

Edwards & Buck, for Appellant.

Goodrich & Street, for Appellees.

KIBBEY, J.—The pleadings and statement of facts show that Lon D. Hall owned the whole water location and all the ditches in controversy. That he contracted to sell to Hargrave one share of stock in the Enterprise Canal, and "to furnish said party of the second part (Hargrave) for all time water sufficient to irrigate one hundred and sixty acres of land." This contract was entered into the third day of August, 1886. Then the canal was not constructed. Eight hundred dollars was the consideration to be paid. March 10, 1887, the following receipt was given: "Received of P. M. Hargrave the sum of (50) fifty dollars, being the amount in full for one share and water right in the Enterprise Canal as per agreement dated August the third, 1886. [Signed] Lon D. Hall, per John R. Hall." This receipt entitled the appellant to all his rights under the contract. After this—June 29, 1888,—appellee Hall writes Hargrave as follows: "After the tenth of July, 1888, I will expect you to irrigate your place [describing it] from one ditch and using one head gate only." The facts show that Hargrave had been using two head gates and two lateral ditches; that it was great economy for him to do so; that to require him to do as notified would occasion great additional expense to him. The surveyor reported to the court that it would be "almost impossible to irrigate from one head gate." The appellees pulled out and destroyed the head gates of the lateral ditches, and plowed up the ground, and scraped the dirt in the ditches, and, according to appellant's evidence, not contradicted, injured appellant in his trees and crops about five hundred dollars. The appellant used at the time of this summary proceeding only about forty inches of water. The court decreed him eighty inches of water. Appellees were, then, as shown by the decree, clearly in the wrong. Appellant was the first to use water out of the ditch and to plant trees and a crop. According to Hall's evidence, at the time Hargrave bought his share and water right there were only two other shares sold, but before suit was brought Hall had sold shares to eight or ten others. It appears that Hall and the others wanted Hargrave to give up his contract and make a new one agreeing to be placed on an equality in all things with the others, and later share in the labor and ex-

pense of repairing and keeping up said canal, but giving to Hall certain advantages in the canal not accorded to others, or rather certain properties personal to himself. One of the terms of the agreement which Hall wanted Hargrave to make in lieu of the contract he did make reads as follows: "Any water or mill power developed in the extension and enlargement of said canal shall be the sole property of the party of the first part." There is no equity in this if Hargrave preferred to stand by the contract he had made. The appellee was displeased, and tore up and destroyed the two head gates and the two ditches, and thereby injured and damaged him about five hundred dollars. What had Hargrave done to provoke or justify this wanton trespass? He had claimed that he was entitled to stand by his contract, and that it gave him a right to sufficient water to irrigate one hundred and sixty acres, though he was only using one half the inches the court held he was entitled to. The court decreed that he was entitled to eighty inches of water and two head gates, but to use only one at a time, and that "plaintiff shall use and have the enjoyment of such water upon precisely the same terms as other patrons of said Enterprise Canal, and shall be subject to the same rules of distribution and pro rata shares and shall pay his proportion of costs, charges, and expenses in maintaining said canal." Though first to purchase and first to use he is, by the decree, "subject to the same rules of distribution" as those who purchase shares of Hall at subsequent times. In times of scarcity of water did not Hargrave have a right to water "sufficient to irrigate one hundred and sixty acres of land"? "And the said first party further agrees to furnish said party of the second part, for all time, water sufficient to irrigate one hundred and sixty acres of land," is the language of the written agreement. By the decree, as we understand it, another condition is added,—viz., provided further that parties who shall hereafter buy shares of Hall may require Hargrave to prorate his sufficiency with them. But it is apparent by the decree of the court that he was entitled to eighty inches of water and two head gates. We think it is apparent from the evidence that appellant had done nothing to justify or mitigate the arbitrary action of the appellees in destroying his head

gates and ditches and threatening to continue so to do, and that appellant was, therefore, entitled to an injunction. We think the decree should also have given him damages and costs. Judgment is therefore reversed and a new trial granted.

All concur.