SOUTHER et al. v. SAN DIEGO FLUME CO.

(Circuit Court of Appeals, Ninth Circuit. February 16, 1903.)

No. 814.

1. WATER COMPANY—CONTRACT—CONSTRUCTION—APPORTIONMENT OF WATER AMONG CONSUMERS.

A water company, being a public service corporation, and engaged in supplying for domestic, irrigating, and other purposes water appropriated under the laws of California, contracted to furnish a certain amount of water, "subject to such reasonable general rules and regulations" as it might adopt. The contract provided that if the company's supply of water was shortened by act of God, drought, etc., the lands to which the water was attached should be entitled "to only such water as can be supplied * * * after the full supply shall have been furnished to all cities and towns" dependent on the company for water, and the company "shall not be responsible for any deficiency of water occasioned by any of the above causes." *Held*, that the consumer was subject, in time of drought, to an apportionment of water among all consumers, and he was not entitled to his full quota as soon as cities and towns were supplied.

2. SAME—REASONABLENESS OF REGULATION.

The clause authorizing reasonable rules and regulations by the company alone authorized such apportionment.

Appeal from the Circuit Court of the United States for the Southern District of California.

Bicknell, Gibson & Trask, for appellants.

Works, Lee & Works, for appellee.

Before GILBERT, Circuit Judge, and HAWLEY and DE HAVEN, District Judges.

DE HAVEN, District Judge. This action was originally brought by the appellants to cancel a contract made between them and the ap-

pellee, by which they purchased from the appellee the right to a con-tinuous flow of water, and also to recover damages for the failure of the appellee to furnish the same. The appellee answered, and also filed a cross-complaint, in which it prayed for a judgment for the amount which it alleged was due it from the appellants by the terms of the same contract, and also for a decree that the real estate described in the con-tract be sold to satisfy such judgment. Such proceedings were had in the action that the original bill was dismissed by the Circuit Court, and the case was finally tried upon the appellee's cross-complaint and the answer of the appellants thereto, and a decree was rendered in favor of the appellee for the relief demanded in the cross-complaint. 112 Fed. 228. This is an appeal from that decree. The cross-bill alleges that on March 12, 1890, the appellee entered into a contract with the appellants by which it sold and conveyed to them a water right of and to 15 inches of water, continuous flow, for the sum of $9,000, and an additional semiannual payment for each inch of water so conveyed. The contract is set out in the cross-bill in full, and contains the follow-ing, among other, provisions:

"The party of the first part [that is, the appellee] covenants and agrees for itself, its successors and assigns, to furnish, subject to the restrictions and conditions herein contained, a continuous flow of water, equivalent to 12,960 standard gallons in every twenty-four hours, for each inch of said fifteen inches of water, miners' measure, under a four-inch pressure, hereby conveyed, subject always, however, to such reasonable general rules and regu-lations as the said corporation may from time to time adopt.

"Provided, however, that if said corporation's supply of water be at any time shortened, or its capacity for delivering the same impaired, by the act of God or by the elements, or by drought, or by the failure of the average amount of rainfall in the mountains, or by operation of law, riot, insurrec-tion, or public enemies, or by accident or willful injury to any part of the system of waterworks, the above-described land and the lands to which said ten inches of water, or any portion thereof, may be attached, as hereinbefore provided, shall, during the period of such shortage or impairment, be entitled to only such water as can be supplied to and for it after the full supply shall have been furnished to all cities and towns that are or may be de-pendent either in whole or in part upon said system of waterworks for their supply of water for municipal purposes and for the use of their inhabitants.

"And the said party of the first part shall not be responsible for any de-ficiency of water occasioned by any of the above causes, but the party of the first part shall use and employ all due diligence at all times in repairing and protecting its said flume and in maintaining the flow of water therein."

In the cross-bill it is further alleged:

"That during the winter 1893–94 and the summer of 1894 a severe and prolonged drought prevailed throughout the said county of San Diego, and covering the entire watershed of your orator, and there was a failure of the average amount of rainfall in the mountains from which your orator ob-tained its water supply; and by reason of said drought and failure of the average amount of rainfall, and for no other reason, your orator was, without fault or neglect on its part, unable to supply to the consumers of its water, and to whom it had become liable to furnish water, the full supply to which they were entitled; and by reason thereof, and for no other or different cause, your orator duly notified all consumers, including the defendants, that in order that all might suffer as little as possible from the scarcity of water the supply to be furnished to all consumers during the continuance of said drought would be reduced one-half; and in pursuance thereof the gates con-necting the flumes and pipes of your orator with the pipes and flumes of

consumers, including the defendants herein, were so set and maintained as to furnish during said time only such one-half of the full supply of water; but that immediately upon said drought being broken, and as soon as your orator was able to do so, it gave notice to all said consumers, including the defendants, that it was ready to and would again furnish the full supply of water."

The answer to the cross-bill admits "that during the summer of 1894 a drought prevailed throughout the said county of San Diego, covering the entire watershed of cross-complainant, and that there was a failure of the average amount of rainfall in the mountains from which cross-complainant obtains its water supply," but denies that for this, "and for no other reason," the cross-complainant was, "without fault or neglect on its part," unable to supply the full quantity of water to those to whom it had become liable to furnish water, and in this connection the answer alleges that the appellee's system did not have a capacity of more than 375 inches, and that prior to June 7, 1894, it had contracted to furnish 600 inches; and, continuing, the answer alleges:

"And defendants further aver, on information and belief, that by reason of the said cross-complainant having prior to October 2, 1894, sold and tried to furnish more water, for compensation, than it had the capacity to supply, and for no other reason, the cross-complainant was unable to, and failed to furnish the defendants, from June 7, 1894, until October 2, 1894, with their 15 inches of water, under said contract of March 12, 1890."

The answer further alleges that by reason of such failure upon the part of the appellee to perform the obligations of its contract the appellants gave notice to the appellee on October 2, 1894, that said contract was rescinded by them. The Circuit Court found that appellee furnished to appellants only 7½ inches of water from June 7, 1894, to December 10, 1894, and that the failure to supply the full quantity of 15 inches was because of the drought which prevailed during the summer of 1894, and that by reason thereof the appellee was, "without fault or neglect on its part, unable to supply to the consumers of its water, and to whom it had become liable to furnish water, the full supply to which they were entitled, and by reason thereof, and for no other or different cause, the cross-complainant duly notified all consumers, including the defendants to the cross-bill, that, in order that all might suffer as little as possible from the scarcity of water, the supply to be furnished to all consumers during the continuance of said drought would be reduced one-half." This special finding is fully supported by the evidence. The court also found "that the cross-complainant has fully and in all things complied with and performed all of the terms, covenants, and conditions of said contract on its part to be done and performed." It is urged by appellants that this general finding is not sustained by the evidence, and whether it is or not depends upon the proper construction of the contract above referred to. The contention of the appellants is that by the terms of that contract the appellee became absolutely bound to furnish them with 15 inches of water, continuous flow, unless because of drought the appellee should not have that amount of water to deliver after supplying all cities and towns that were dependent, in whole or in part, upon its system of waterworks for their supply of water for domestic purposes and for the use of their in-

habitants. If such was the obligation assumed by the appellee, then the finding that the contract was fully performed by the appellee is not sustained by the evidence. The Circuit Court, however, construed the contract otherwise, and held that the appellee was excused from furnishing to the appellants the 15 inches of water named in the contract, because of the drought, which made it impossible for the appellee to furnish to all of the consumers of its water, during the summer of 1894, the full supply of water to which they would otherwise have been entitled. We cannot say that this construction is wrong. In arriving at the meaning of the provision that the appellee was not to be responsible for any deficiency of water occasioned by drought or failure of the average amount of rainfall, and the other provision by which the appellee reserved the right to furnish appellants with water under such reasonable general rules as it might from time to time adopt, the court must take into consideration the facts and circumstances surrounding the parties at the time, and in view of which the contract was made. Blossom v. Griffin, 13 N. Y. 569, 67 Am. Dec. 75. The appellee, the San Diego Flume Company, was a corporation organized under the laws of this state for the purpose of supplying water for domestic irrigation and other uses in the county of San Diego for compensation, and was then engaged in the business for which it was incorporated. The water which was the source of its supply had been acquired by it by appropriation under the Constitution and laws of the state of California, and in the matter of its sale and distribution the appellee owed a duty to the public. The appellants were not the only persons dependent upon the appellee's system for their supply of water. The contract was made with reference to these facts, and while it doubtless contemplated that the appellee was not to make sales of water beyond its ordinary capacity to supply, it certainly contemplated that the appellee should, even if it had not already done so, have the right to contract to make delivery of water to other persons up to that limit; and, foreseeing that there would probably be times of drought occasioned by the failure of the average rainfall, it was stipulated that cities and towns dependent upon appellee's system should be first supplied, and that in no event was it to be responsible for any deficiency of water occasioned by drought or any of the other causes named in the contract. It was also provided that the appellants were to have their supply of water, "subject to such reasonable general rules and regulations" as the appellee might "from time to time adopt." This provision gave to the appellee the right to make pro rata distribution of its water to the appellants and its other consumers as the court found that it did, when by reason of drought it was unable to furnish them with the full number of inches which they would otherwise have been entitled to receive under their contracts.

It is conceded by the appellee that by reason of a mistake in the calculation of interests the decree should have been for $685 less than the amount therein given, and it consents that such mistake may be corrected by a modification of the decree.

The decree of the Circuit Court is modified by deducting therefrom the sum of $685 as of date of December 30, 1901, and as thus modified is affirmed, with costs.