# STATE v. LARAMIE RIVERS CO.

(No. 2224; April 19, 1943; 136 Pac. (2d) 487)

12

For the appellants, there were briefs by *R. J. Jackson* and *Attorney General E. T. Kerr*, of Cheyenne, and oral argument and re-argument by *Mr. Jackson*.

14

For the respondents, there were briefs and oral argument by *M. E. Corthell*, of Laramie.

18

BLUME, Justice.

This is an action by 24 plaintiffs acting on behalf of themselves and others similarly situated against the Pioneer Canal Company and the Laramie Rivers Company for mismanagement in connection with two different systems of irrigation, namely, that of the Pioneer Canal and the Lake Hattie Reservoir, for an injunction, for the appointment of a receiver, and other equitable relief. The record shows the following facts:

The Pioneer Canal was constructed by the Pioneer Canal Company. The water is derived from the Big Laramie River, in Albany County, Wyoming. The Canal Company was organized on March 29, 1879, under the provisions of Chapter 34, Compiled Laws of Wyoming 1876, for the purpose, as permitted by the statute, of constructing, maintaining and managing ditches and reservoirs in Albany County, and conveying, collecting and distributing water for agricultural and other purposes. Its capital stock was Ten Thousand Dollars, consisting of one thousand shares, each share of ten dollars. At the western end of the canal, the canal company constructed a reservoir, called Sodergreen Lake, with a storage capacity of about 1000 acre feet of water. It seems that the shares of stock which had been issued were not at that time owned by the parties in connection with the irrigation of lands, but were owned as shares of any industrial company. About 1908, some parties, desiring to irrigate a great body of land acquired from the Union Pacific Railroad Company, organized the Lake Hattie Irrigation Company, which later became the Laramie Water Company, and undertook to construct Lake Hattie Reservoir and canals in connection therewith, the reservoir being located about five miles north of Sodergreen Lake, with

an inlet and supply ditch of water from the Big Laramie River through Sodergreen Lake and an inlet and supply ditch of water from the Little Laramie River, located about four miles north of Lake Hattie Reservoir. It was evidently intended to use the irrigation systems in connection with the Pioneer Canal and Lake Hattie Reservoir in common, and as a unit. The owners of stock in the Pioneer Canal Company sold their stock to what became the Laramie Water Company, and evidently as part of the bargain, increased the capital stock of the Pioneer Canal Company to two hundred and ten thousand dollars, consisting of twenty-one thousand shares of ten dollars each, all of which apparently then became the property of the Laramie Water Company. The corporations were kept as separate entities, but a lease was issued which gave a right to the Laramie Water Company to use the Pioneer Canal. The Laramie Rivers Company, one of the defendants herein, was organized in 1925, and acquired all the rights of the Laramie Water Company. In 1912, the waters of the Big Laramie River were adjudicated by decree of the district court of Laramie County, herein referred to as the decree or adjudication of 1912. That was on appeal from an adjudication made by the Board of Control of this state. By that decree the Pioneer Canal Company was awarded 71.43 cu. ft. p. s. t. as of April 19, 1879, which is preceded in right by but few others, and appears to be a reasonably first-class water right. An additional 210.48 cu. ft. p. s. t., called the second appropriation, was awarded the company with a priority as of date October 1, 1884. This appropriation is subject to many other water rights in the river, and the testimony indicates that no water under it is ordinarily available except while the water of the river is high, and ending, ordinarily, about July 1 of each year. More particulars as to this adjudication will be mentioned hereafter. Prior to the time of this adju-

dication, the Pioneer Canal Company had conveyed certain water rights by deed, the exact time not appearing, and rented other water rights to irrigators. In 1912, it sold 3063 shares of its capital stock to farmers, each share of stock representing a water right for one acre. Additional shares were sold thereafter, the last about 1920, except that a few rights were sold as late as 1935, each to water not to exceed five acres of land. According to the testimony of the witness Holliday, there are outstanding water rights of the Pioneer Canal for 7518.44 acres of land, 6814 being represented by shares of stock in the Company, owned by 58 persons, 187.05 acres in West Laramie represented by deeded rights owned by 27 persons; 500.5 acres of land have other deeded rights from the company, owned by five persons, and rights for 16.89 acres of land are rented by two persons. Ninety-two different persons, accordingly, are owners of these rights, according to the testimony of the witness. The Laramie Water Company acquired a right to store 68,500 acre feet of water with a priority of 1908, and it and its successor sold water rights in Lake Hattie Reservoir to about 58 persons. A few persons, a half-dozen, have a water right in both the Pioneer Canal and Lake Hattie Reservoir. From the time that this reservoir was constructed and water was furnished therefrom, to and including 1932, the two systems were operated as a unit in so far as furnishing water was concerned, though maintenance charges were kept separate; that is to say, the waters were interchanged and no particular attention paid as to whether the water came from the direct flow of the Big Laramie River or from Lake Hattie Reservoir; the least expensive method being adopted in each case. And this method of distribution of water appears to have been of no disadvantage to anyone until about 1931. In that year a drouth began, but little water was contained in Lake Hattie Reservoir, and practically no

water was available therefrom commencing about 1932. And that was the situation at the time of the trial of this case, and perhaps still is at the present time. The owners of rights in the Pioneer Canal Company, in 1932, complained seriously of the intermingling of the waters of the two systems, and that ceased by the voluntary act of the two companies, commencing with 1933. It was this scarcity of water which brought about the bringing of the action herein, which was commenced in 1936.

The amended petition filed herein alleges, in so far as is necessary to state herein, that the Laramie Rivers Company, one of the defendants herein, is, by reason of the ownership of stock and interlocking directors, in control of the Pioneer Canal Company; that the two companies are managed by the same person; that in 1912 the rights in connection with the Pioneer Canal Company were adjudicated as heretofore mentioned; that plaintiffs own about 3500 acres of land which need water for irrigation; that plaintiffs have water rights either by appropriation as to lands under the Pioneer Canal or by contract as to lands under the Lake Hattie system; that plaintiffs Buzzard, Cook, C. C. Falkenstien, Olivia M. Falkenstien, have an adjudicated right under the decree of 1912; that plaintiffs Jensen, Mortensen and Ryan have a water right under the decree of 1912 and under grant from the Pioneer Canal Company; that plaintiffs Hurich and McCann have a water right under the decree of 1912 and under grant from the Pioneer Canal Company and from the Laramie Rivers Company; that plaintiffs Krueger, Ed Matson, J. D. Perkins, S. D. Perkins, Lillie S. Perkins, John Schrader, State of Wyoming and State Land Board have a water right under the decree of 1912 and from the Lake Hattie Reservoir; that plaintiffs Carlson and Stewart have a water right under contract with the Laramie Rivers Company under the Lake Hattie Res-

ervoir System; that the Laramie Rivers Company, while owning two-thirds of the stock of the Pioneer Canal Company, failed to pay assessments on its stock, thus unduly burdening the holders of the remaining stock; that defendants rented water to various parties, depriving plaintiffs of the rights to which they were entitled; that unlawful preferences were given to various parties; that the waters of the two systems were unlawfully intermingled and interchanged; that the defendants committed waste, did not furnish water when they should, failed to take water into the Lake Hattie Reservoir when they were able to do so; that they failed to keep the canals and reservoirs in proper repair, although maintenance charges were collected; permitted taxes on the Lake Hattie Reservoir System to become delinquent; encumbered that system by mortgage so that there is danger of foreclosure. Plaintiffs prayed that defendants be required to account for and to pay back money unlawfully collected; that they be enjoined from giving unlawful preference to anyone in the distribution of water, from commingling the waters of the two systems, from selling or renting water except from Lake Hattie Reservoir, and from using money collected for unlawful purposes; that defendants be compelled to carry out their contracts; that a receiver be appointed and that general equitable relief be granted.

Separate demurrers to the amended petition were filed on the part of the defendants on the ground of misjoinder and defect of parties and misjoinder of causes of action, and that the amended petition fails to state facts to constitute a cause of action. These demurrers were overruled on the first mentioned grounds, but sustained as to the last, and the plaintiffs were given leave to plead further. We do not find that they, plaintiffs, pleaded further, unless it was by interpolation. In any event the defendants filed their sepa-

rate answers. The ownership of 13,700 shares of the Pioneer Canal Company stock by the Laramie Rivers Company, the adjudication of water rights, and the acquisition of rights by the respective parties, as alleged, from the Pioneer Canal Company or from the Lake Hattie System were admitted except as to Helen Ryan; all allegations as to waste, preference, failure to repair, and other unlawful conduct were denied. Misjoinder of plaintiffs and of causes of action, defects of parties, the statute of limitation, laches and estoppel by reason thereof, were pleaded in separate defenses. Affirmative allegations in the answers were denied by a reply. The case was tried by the court without the intervention of a jury. There was a sharp conflict in the testimony as to waste and mismanagement. Judgment was rendered July 25, 1941, giving the plaintiff Helen Ryan a right in the waters of the Pioneer Canal Company to irrigate 156 acres of land, enjoining the Pioneer Canal Company from furnishing water adjudicated in its favor to those who acquired rights from the Laramie Rivers Company or its predecessors, and otherwise finding in favor of the defendants. From that decree the plaintiffs have appealed to this court. The decree was subsequently modified so that rotation of water, as provided by statute, should be permitted. The cause was argued in this court by brief and orally in 1942. On account of the importance of the questions involved herein, the court called for supplemental briefs, which have been filed. An application for a second oral argument was granted, and that has been made. Facts in addition to those above set out will be mentioned in connection with the points discussed herein.

I. The theory upon which the case was decided by the trial court does not appear in the record. However, if it was decided correctly upon any theory, the judgment must be sustained. Peterson v. Johnson, 46 Wyo.

473, 28 P. (2d) 487. The striking fact meets us at the threshold of the case that there is a great diversity of interests manifest. Our statute is very liberal in this respect, but it is not, we think, so liberal as to permit the diversity of interests to be determined in one action which appear in the case at bar. We shall not investigate the question of defect of parties defendant, but confine ourselves to the question of joinder of causes of action and to the question relating to the parties plaintiffs. These questions are closely connected and interrelated in the case at bar. The Laramie Rivers Company which controls the Lake Hattie Reservoir system is a different and separate corporation from the Pioneer Canal Company, which controls the Pioneer Canal and its system for irrigation. The two corporations are separate entities and control separate rights and property. The waters of the two systems were intermingled and interchanged for a number of years; but that ceased at least three years prior to the commencement of this action, and would give no ground for an injunction or the appointment of a receiver. Our statute provides by Section 89-601, as amended by Ch. 51, Session Laws of 1939, as follows:

"The plaintiff in his petition * * * may join, either as independent or alternative claims as many causes of action, either legal or equitable or both, as he may have against the opposing party. There may be a joinder of causes of action where there are multiple parties, if the requirements of Section 89-513, Wyoming Revised Statutes 1931, as herein amended, are satisfied. * * *."

The section last referred to, as amended at the same time, reads as follows:

"All persons may join in one action as plaintiffs, if they assert any right or relief jointly, severally or in the alternative, if any substantial questions of law or fact common to all of them will arise in the action. * * * A plaintiff or defendant need not be interested in ob-

taining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief and against one or more defendants according to their respective liabilities. * * *."

In the case at bar the questions involved are the mismanagement of two separate corporations, in connection with two different and separate properties, and present two different causes of action. It is suggested that the two corporations should be regarded as one on the principle of Caldwell v. Roach, 44 Wyo. 319, 12 P. (2d) 376, but that case has no application here, and we find no justification for the application of the rule. As hereinafter more fully indicated, some of the plaintiffs are interested only in the Lake Hattie Reservoir system, and have no interest whatever in the Pioneer Canal, and there is, accordingly, no question either of law or of fact in which all of the plaintiffs are jointly or severally, or otherwise, interested. It is stated in 1 C. J. S. 1207 that "a complaint or petition states different causes of action where it seeks to enforce distinct and separate rights of different plaintiffs." And in 1 C. J. S. 1274 it is stated that "the general rule is that, in order to authorize a joinder of causes of action involving different plaintiffs, it is necessary that each of such causes affects all of the plaintiffs, or that they have a joint or common interest, and if their causes or claims are distinct or separate, they cannot be joined, whether they are against the same defendants or different defendants. * * * The true test to be applied has been said to be whether proof of the vital fact necessary to establish the right of one planitiff can be made by the same evidence which is necessary to establish the corresponding right in each of the other plaintiffs." Again in 1 C. J. S. 1278, it is stated that "to authorize a joinder of causes of action in tort involving different plaintiffs, it is necessary that they shall each affect all

of the plaintiffs, and it is not sufficient for this requirement that their several causes of action arise out of the same wrongful act." These authorities show that there is a misjoinder of causes of action herein.

The difficulties in this connection are accentuated by the fact that this is a representative or class action. Plaintiffs have brought into the suit not only those plaintiffs specifically named in the amended petition, but also others similarly situated, under the provisions of Section 89-516, Rev. St. 1931, reading that "when the question is one of common or general interest of many persons, or when the parties are very numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." A suit of that nature is discussed in Pomeroy's Code Remedies (5th ed.) Sections 285-298 and 47 C. J. 40 and subsequent pages; 39 Am. Jur. 917-928. It is stated in 47 C. J. that "one who has no right to bring an action cannot maintain it for the benefit of those alleged to be similarly interested." pp. 43-44. "The person who brings the action can only represent a class with which he has a common interest, and he cannot represent two classes with different rights and liabilities." p. 44. "Where the question is one of common or general interest of many persons, one or more of them may maintain an action for the benefit of all. The representative action is maintainable where the subject of the action presents a question of common or general interest, and where all the persons involved have a similar interest in the relief demanded." pp. 46-47. "A representative action cannot be maintained by joint plaintiffs whose interests are antagonistic, and where one of them has interests adverse to those of the class for whose benefit the action is brought." p. 45. "The interest must be common to all of the members of the class represented, and where it is not, a representative action cannot be maintained. * * * Persons who occupy

or may occupy, antagonistic positions and hostile interests are not properly represented either by plaintiff or defendant, so as to exclude them from the right of being personally heard on the issues involved in the action." p. 48. And see 39 Am. Jur. 922, and annotation in 132 A. L. R. 753, that a representative action cannot be maintained when interests are antagonistic or hostile. In the case at bar, antagonistic interests exist, as will be shown more fully hereafter, not only between the plaintiffs, as a whole, on the one hand, and the parties purported to be represented on the other, but between the plaintiffs themselves. That is a rather unusual situation which we seldom meet with in the books. It would seem to be clear, as already stated, that, since plaintiffs purport to represent others jointly, if that is improper as to one or more of the plaintiffs, it is improper as to all. 47 C. J. 45; Schoemaker v. Board and another, 46 Ind. 175. See also 47 C. J. 56, Sec. 115. In other words, the community of interests must exist throughout, among those who are actual and among those who are virtual plaintiffs. That would seem necessarily to follow from the requirement of community of interest.

It appears herein that the plaintiffs Carlson, Krueger and Stewart have no interest in the Pioneer Canal, either by a grant from that company, or by reason of the adjudication of water in 1912. They are interested only, and have only rights in, the Lake Hattie Reservoir. That is admitted in the brief of counsel for the plaintiffs. It is apparent, accordingly, that they have no community of interest with those parties who have an interest in the Pioneer Canal, and that is true not only with some of their co-plaintiffs, but all others, whom they purport to represent, who are interested in that canal. The action herein was brought for an injunction on account of the mismanagement by the defendants of the respective systems which they con-

trol. The above named plaintiffs Carlson, Krueger and Stewart are interested in the mismanagement of the Lake Hattie Reservoir system, but not in the mismanagement of the Pioneer Canal.

Facts in the record show lack of common interest on the part of other plaintiffs. J. D. Perkins, S. D. Perkins, Lillie S. Perkins, Matson, Schrader, State of Wyoming, and Wyoming Farm Loan Board, claim an interest in the Lake Hattie Reservoir system. In addition to that they also claim that they have a water right under the adjudication of water in 1912. And they claim an equal proportionate right for all of the lands which are mentioned as lying under and irrigable under the Pioneer Canal in that adjudication. As heretofore noted, 92 different parties claim a right out of that canal by reason of a deed, capital stock or lease issued by the Pioneer Canal Company. That includes some of the plaintiffs. Perhaps some of the lands of all of these 92 parties are not described in the adjudication above mentioned, but most of it appears to be. And the plaintiffs purport to represent all of those whose lands are thus situated. As we have seen, they cannot represent parties whose interests are antagonistic. Counsel for plaintiffs contend in the supplemental brief that the rights granted by the Pioneer Canal Company are of no effect, if their theory of the case is correct. That itself would seem to show the antagonistic attitude between those who claim rights under the adjudication alone, and those who claim rights by virtue of grants from the Pioneer Canal Company. Hence the interests of those plaintiffs last above specifically mentioned would seem to be clearly antagonistic to the interests of those who have grants from the Pioneer Canal Company in the Pioneer Canal, if those plaintiffs do not have any right in that canal by virtue of the adjudication of 1912 above mentioned. For in that case they have no greater cause to complain of the mismanage-

ment of the Pioneer Canal Company than have the above named plaintiffs Carlson, Krueger and Stewart. And that fairly brings us to the consideration of the question which appears to have become one of the main questions in the case, and which all parties are anxious to have decided, namely, whether or not the lands mentioned in the 1912 adjudication have, by reason of that fact, an equal proportionate interest in and to the waters adjudicated in favor of the Pioneer Canal, as claimed by counsel for the plaintiffs herein. We shall, accordingly, proceed to consider that question in detail, and in that connection a statement of additional facts must be made.

II. The adjudication of 1912 states as follows:

"With respect to the Pioneer Canal the court does find that said canal was commenced April 19, 1879; that as originally planned and constructed said canal had a capacity of 71.43 cubic feet per second; that the work of constructing said canal and the application of the water carried therethrough to the irrigation of lands lying thereunder, equivalent to 5000 acres, was prosecuted with diligence; that on October 1, 1884, the said appellant, Pioneer Canal Company, commenced the enlargement of said canal and prosecuted the work of such enlargement and the application of the water carried therethrough to the irrigation of the lands lying thereunder with diligence; that as so enlarged said ditch had a capacity of 306.72 cubic feet per second; that of the lands susceptible of irrigation from said canal there are now under irrigation therefrom 19,739 acres; that the said appellant is entitled to an appropriation through said canal dating from April 19, 1879, to the extent of 71.43 cubic feet per second for the irrigation of those lands, aggregating 49030 acres, described in the proof of appropriation of said appellant, and to a second appropriation dating from October 1, 1884, to the extent of not to exceed 210.48 cubic feet per second for the irrigation of the same lands; that said appellant owns and controls no lands and the water carried through said canal has at all times been used by the owners and those in possession of the lands lying

under said canal; that the users of water from the said Pioneer Canal, the dates of the commencement of such use, the amounts so used and the lands upon which said use has been made are as follows:"

The decree then enumerates some 32 parties who had used water from the Pioneer Canal, to the extent of 91.76 cubic feet per second on 6192.75 acres of land. It does not appear in the record whether any of these parties or their successors in interest are now claimants of any of these waters. The decree then adjudges the following: Priority No. 6—Name of Ditch: Pioneer Canal; Name of appropriator: Pioneer Canal Company; date of appropriation, April 19, 1879; Use: Irrigation; amount of water: 71.43 cu. ft. p. s. t.; Number of acres irrigated: 49030; Description of land irrigated: (describes the land). In like manner the decree gives as a second appropriation to the Pioneer Canal Company priority No. 25, as of date October 1, 1884, for 210.48 cu. ft. p. s. t. for the same number of acres and describing the same land. And the decree further states: "That the above described lands, aggregating 49030 acres, for the irrigation of which the Pioneer Canal Company is adjudged to possess two appropriations through the Pioneer Canal, have an easement in the said canal, in that the owners of said lands have a right to the flow of water therein to the extent that they make beneficial use thereof on such lands, subject to a reasonable charge for the maintenance and service of such carrier canal."

As already stated, it is the contention of the plaintiffs that this decree, which was rendered on appeal from the State Board of Control, adjudicated the waters in controversy equally to the 49030 acres described therein, and that all of this land is entitled to an equal proportionate share of the water so adjudicated. The decree does not so state, at least specifically. While one part of the decree states that 19,739 acres, without de-

scribing it, were then under irrigation, that is contradicted in that part which undertakes to state the actual amount of water used and the actual number of acres irrigated, and limits this acreage to 6,192.75 acres. No specific rights of any of the plaintiffs appear to be based on or identified with the land thus described. The first appropriation above mentioned is for 71.43 cu. ft. p. s. t. That is the only appropriation which can be reasonably relied on as furnishing sufficient water at all times. The second appropriation of 210.47 cu. ft. p. s. t. is in the nature of a flood right. It is generally recognized in this state that one cubic foot of water p. s. t. is approximately the amount of water necessary to irrigate 70 acres of land. If plaintiffs' contention were correct, the first appropriation of 71.43 cu. ft. p. s. t. would be spread over about 700 acres of land for each cubic foot, making only 1/10th of an actual and reasonable water right; even the second appropriation, in the nature of a flood right, would be spread over about 230 acres for each cubic foot, and the two combined over about 170 acres of land for each cubic foot. Counsel for the plaintiffs say that we are not concerned with that. But it has a bearing upon the meaning of the decree. We cannot give it a meaning which is unreasonable. The meaning attributed to it by plaintiffs is, we think, unreasonable, inasmuch as it would leave for any parcel of land so little water as to be of little value to any. Counsel for plaintiffs say in their supplemental brief that they believe that a large amount of the 49030 acres is not irrigable, and that the irrigable land would probably be confined to about 11,000 acres. The record fails to show this fact, and it would be rather dangerous to decide this case on facts of which we have no knowledge whatsoever. In any event, the theory of plaintiffs must stand or fall upon the basis of the decree mentioning 49030 acres of land. If it is not

correct upon that basis, it cannot be correct upon any other.

In the usual course of conduct, an appropriator does what he can to advance his interests in that connection. A party claiming an interest antagonistic to him may appear in the proceeding, but it is not likely that any one else will. So far as the record shows, and as would naturally be most likely, no one except the Pioneer Canal Company appeared before the Board of Control or before the court on appeal, to further the appropriation for the Pioneer Canal, or for any other purpose in connection therewith. The canal company doubtless, and it alone, made the proofs in connection with it, selected the lands, and caused them to be described in the decree, with the approval, of course, of the Board of Control and of the court. Section 30, Ch. 34, Comp. Laws of 1876, under which laws the canal company was organized, provided that "any company constructing a ditch under the provisions of this article, shall furnish water in the way named in the certificate, as the way the water is designated to be used, whether miners, mill men, or farmers, whenever they shall have water in their ditch unsold, and shall at all times give the preference to the use of the water in said ditch, to the class of persons so named in the certificate, the rates of which water shall be furnished to be fixed by the county commissioners, or the tribunal transacting county business, as soon as such ditch shall be completed and prepared to furnish water." The section was repealed by Sec. 18, Ch. 86, Session Laws of 1907. It is not necessary herein to determine the exact meaning of that section, and we refer to it merely to show that the company naturally expected, in some manner, to dispose of its water rights for value received to some one. It would not have appropriated the water otherwise. And the law in permitting the appropriation to be made by it necessarily implied it might dispose of

its rights in some manner. It is the policy of the law that all water be utilized. Hence the Company was interested in having an acreage designated in the decree sufficiently large to give it leeway in disposing of the water to its advantage. It is not reasonable that it expected and desired an equal proportionate amount of water to be definitely affixed to each parcel of land designated in the decree, when, perhaps, as counsel for plaintiffs now point out, part of the land might be worthless for irrigation; the owners of some of the land might not want the water, and others might not be able to pay for the water right even upon payments on an annual basis. The designation of the land in the decree cannot, accordingly, from the standpoint here discussed, be accepted as granting in itself any definite right to any land so designated.

It cannot, we think, be said that the action of the court shows the contrary to, or is inconsistent with, what we have said. The primary purpose for which the adjudication in question was made was to determine the priorities of the various ditches which took water from the Big Laramie River. See Laramie Irrigation and Power Co. v. Grant, 44 Wyo. 392, 13 P. (2d) 235; Campbell v. Wyoming Development Co., 55 Wyo. 347, 100 P. (2d) 124. And the general rule is laid down in 67 C. J. 1397, that "decrees determining the priorities and the amount of appropriations to the several ditches in an irrigation district are not intended to designate the persons entitled to the use of water thus appropriated to a particular ditch, nor to determine the relative rights or priorities of consumers from any particular ditch, as between themselves." A number of Colorado cases are cited. We appealed for analogies in connection with decrees of adjudication of water rights to the Colorado rule in the Grant case cited supra. In Colorado, it seems, the decrees do not state the lands which are irrigated, though, doubtless, the

proofs to be submitted must be similar in nature as the proofs submitted in connection with adjudications in this state. See Farmers Irr. Dist. v. Frank, 72 Nebr. 136, 100 N. W. 286. The main difference appears to be that under Section 122-118, Rev. St. 1931, which appears to have been the law since statehood, the certificates issued by the Board of Control contain a description of the land on which the water is to be applied. Nevertheless, the primary purpose of the adjudication is the same as in Colorado. The certificate above mentioned is issued to the person, association or corporation *represented in such determination* (adjudication). In this case it was, accordingly, issued to the Pioneer Canal Company. No rights thereunder are granted, at least directly, to the individual owners of the land lying under the canal. There is no other provision in the statute, so far as we can find, which could by any possibility be construed as granting any rights to such land owners. In an adjudication of water rights a *claimant* must submit his proof as to his appropriation, including "the date when water was first used for irrigation * * * and the amount of land reclaimed * * * and the amount of land such ditch is capable of irrigating." Sec. 122-108, Rev. St. 1931. The Board of Control, in its adjudication, enters of record "an order establishing the several priorities of right to the use of waters of said stream, and the amounts of appropriations of the several persons *claiming* water from such stream. * * * Each appropriation shall be determined in its priority and amount by the time by which it shall have been made, and the amount of water which shall have been supplied for beneficial purposes." Sec. 122-117. We find no specific provision as to the order to be made by the court, on appeal from the Board of Control. We infer that it should be similar to that entered by the Board. *Claimants* then must make their proof; adjudications are made in favor of *claimants* and no

one else. In this case the owners of land above mentioned were not claimants. In any event, whatever meaning should be attributed to the provision for the certificate above mentioned, it should not be given an unreasonable meaning, which it would be, as already stated, if it were held that the water was to be scattered over 49030 acres of land, and if it were construed as a grant for the benefit of the various owners of parcels of land lying under the canal, who were not claimants and were not in any way party thereto. It appears to be much more likely that under these circumstances the description of land contained in the decree should be construed—at least it may well be construed—as merely a limitation or restriction on the right of the Pioneer Canal Company, and a restriction is not a grant. Loup River Public Power Dist. v. Power & Irr. Dist. (Nebr.) 5 N. W. (2d) 240, 246. In fact, we shall presently show that it can not be construed to be a grant. The effect, if any, if it was a restriction, presents a question not before the court. Counsel for plaintiffs seem to think that to dispute the rights of the plaintiffs, as herein claimed, constitutes a collateral attack on the decree, and such attack cannot be made herein. We cannot see the force of that. In the first place, the main question is as to the meaning of the provision which states on what land the water is applied. That does not involve any attack on the decree. If the decree is merely a restriction on the rights of the Pioneer Canal Company, plaintiffs have not established any rights in themselves thereby, and this they must do. In the second place, we cannot see how the court had any power to grant any water right to one who had never made any appropriation in any manner, and particularly is that true under the circumstances in this case, when none of the land-owners were before the court and none of them made any claim whatever to any such right. See New Loveland & Greeley I. &

L. Co. v. Ditch & Res. Co., 27 Colo. 525, 62 Pac. 366; 27 R. C. L. 1272. We shall consider that point more fully as we progress.

Counsel for plaintiffs have, we fear, laid too much stress on Section 1, Ch. 68, Session Laws of 1909, now embodied in Section 122-401, Rev. St. 1931, providing that water rights should be attached to land. Nebraska passed a similar law in 1896. It was stated in United States v. Tilley (CCA) 124 F. (2d) 850, 857, that "appropriative rights acquired prior to 1895, however, were not necessarily required to be attached to specific land, and so could, generally speaking, be transferred or assigned for use on other property." See on that point also Clague v. Tri-State Land Co., 84 Nebr. 499, 121 N. W. 570, 133 Am. St. Rep. 637; Vonburg v. Irrigation District, 132 Nebr. 12, 270 N. W. 835; Enterprise v. Willis, 135 Nebr. 827, 284 N. W. 326; Prosole v. Canal Co., 37 Nev. 154, 140 Pac. 720, 721; Crescent Canal Co. v. Dev. Co., (Cal. App.) 110 P. (2d) 1006, 1009; Stanislaus v. Bachman, 152 Cal. 716, 93 Pac. 858, 864; Germain Irrigation Ditch Co. v. Hawthorne Ditch Co., 32 S. D. 260, 143 N. W. 124; Butte County v. Lovinger, 64 S. D. 200, 266 N. W. 127, 132. Judge Kennedy said in Hughes v. Lincoln Land Company, 27 Fed. Supp. 972, speaking of the statute of 1909, that "considering the fact that in Johnston v. Little Horse Creek Irrigation Company, supra (13 Wyo. 208, 79 Pac. 22, 70 L. R. A. 341, 110 Am. St. Rep. 986), it is held that the right to the use of water based upon a prior appropriation for beneficial purposes is a property right, it would seem that no statute which the state might subsequently pass could abridge that property right or reduce its value without intrenching upon the constitutional right of the owner." However, we do not think it is necessary to decide the point herein. Section 122-401, supra, provides among other things that "water being always the property of the state, rights to its

use shall attach to the land for irrigation * * * Water rights for the direct use of the natural unstored flow of any stream cannot be detached from the lands, place or purpose for which they are acquired, without loss of priority." To *detach* a water right from land implies, of course, that it must first have been *attached* thereto, and that is what plaintiffs cannot show. The claim that it was is wholly inconsistent with the doctrine of appropriation applicable to water rights in the western states, and which we cannot assume was ignored by the legislature in passing the statute of 1909. In such appropriation and that alone, so far as this case is concerned, may be seen a *grant* from the public to the appropriator. Let us first consider the case at hand from the assumed standpoint that the Pioneer Canal Company is a private corporation.

A water right is acquired by an appropriation of water in good faith, initiated by the appropriator or his agent in the manner prescribed by law, pursuing the construction of works in connection with it, if necessary, with reasonable diligence, and applying the water to beneficial use within a reasonable time. These are the essential requisites not only under our statute, but that is the general rule as well. 67 C. J. 982 et seq.; 30 Am. Jur. 612-614. Not one of the foregoing essential elements are present to sustain the theory of counsel for the plaintiffs. We held in Campbell v. Wyoming Development Company, 55 Wyo. 347, 400, 100 P. (2d) 124, that an appropriation or an adjudicated right is not necessarily void, if it is not all being used for a beneficial purpose at the time of the adjudication, but that it is sufficient if the appropriator applies the water to such use within a reasonable time. We did not in that case consider the effect of the adjudication as to any particular parcel of land described in the adjudication. The Wyoming Development Company was apparently the owner of the lands in favor of which the

adjudication was made. At least no question was raised on that point. Even if in such case, it could be said that the adjudication affixed a definite water right to the land described, a point which we need not decide, it would not follow that that should be true in a case, like that at bar, in which the appropriator did not own the land, and in which the owners of the land were not before the court. See Enterprise Irr. Dist. v. Tri-State Land Co., 92 Nebr. 121, 138 N. W. 171, 177. Assuming the usual course of conduct, in the absence of a showing to the contrary, not a single owner of the 49030 acres of land herein mentioned, initiated any appropriation for the land. That was done by the Pioneer Canal Company. Not a single owner of the land constructed any irrigation works in connection with the water right in controversy. That, too, was done by the Pioneer Canal Company. At least the greater portion of the 49030 acres was never irrigated. Counsel for plaintiff say that we should assume that it was, but that is not possible in view of the finding of the court that beneficial use of the water was being made on only 6192.75 acres of land, as to which no specific claim is made herein, or at most to 19,739 acres, which was not described. To hold, then, that a perfected water right could be adjudicated by the court for any particular part of the 49030 acres, definitely affixed thereto, in favor of any particular party (the owner) not before the court, and who did nothing whatsoever to acquire the right so far as the record shows, would be to hold that a perfected water right may be acquired in a rather unusual manner, contrary to all precedents, and that it may be created by mere judicial fiat. That cannot be so. The error in the reasoning of counsel throughout the case lies in the fact that they lay all the stress on the mere description of the land in the decree for which the water was to be used, considering that conclusive, without regard to the essential requi-

sites which must precede a perfected appropriation and water right, and wholly disregarding other rules of law hereinafter mentioned. So far as the record shows, the owners of land lying under the Pioneer Canal, assuming that the Pioneer Canal Company is a private corporation, did not, we think, receive any rights by reason of the decree of 1912. The disposition of the water by the Pioneer Canal Company is a different question.

Since a common carrier of water or a public utility can initiate water rights to be used by others, the situation is somewhat different if the Pioneer Canal Company is a common carrier, though the result, so far as the theory of counsel for plaintiffs is concerned, is not. The court, in the decree of 1912, gave an easement to the owners of the 49030 acres. We have several times held that, while an adjudication which mentions the appropriation of water as being carried through a ditch may be prima facie evidence of the right to divert the water through such ditch, it is in no way binding when the question of the existence of such right comes directly in issue. Collett v. Morgan, 21 Wyo. 117, 128 Pac. 626; Bamforth v. Ihmsen, 28 Wyo. 282, 317, 204 Pac. 345; Link v. Brown, 55 Wyo. 100, 106. The decree of adjudication was entered on appeal from the Board of Control. No issues except those raised before the Board of Control were before the court. Section 122-123; Section 62-1205, Rev. St. 1931. The Board of Control had no power to grant any right in any ditch and no issues, therefore, in that connection may be raised before it. Its power is confined to adjudication of water rights, and the court to which the appeal is taken from the Board has, accordingly, no greater rights in that respect than the Board. Collett v. Morgan, supra. The provision as to an easement, then, is void, except only in so far as it is in harmony with the general law. The explanation for the insertion of that

provision in the decree is probably found in the fact that the court considered the Pioneer Canal Company to be a common carrier, which the plaintiffs contend it is, and from which standpoint we are considering the case now.

The cases are not entirely harmonious, on the question of the manner of disposition of the water appropriated or carried by a common carrier. But the main dispute appears to be on the question as to whether or not the carrier has the right to dispose or sell a water right for a lump sum. Under the so-called Colorado Doctrine, adhered to also by some states other than Colorado, a common carrier of water cannot demand a lump sum for a perpetual water right, but must be content with disposing of the water with payments on an annual basis. Wheeler v. Northern Irr. Co., 10 Colo. 582, 17 Pac. 487; Combs v. Ditch Co., 17 Colo. 146, 28 Pac. 966; Gould v. Maricopa etc. Co., 8 Ariz. 429, 76 Pac. 598; 67 C. J. 1391, note 48; see also Wiel, Water Rights, (3rd ed.) Sections 1280, 1326, 1338. However, the right to dispose of it for a reasonable compensation in some manner exists. People v. Canal Co., 37 Nev. 154, 140 Pac. 720, 722, 144 Pac. 154. If the water is sold for a lump sum, the contract appears to be binding. Dickson v. Dick, 59 Colo. 583, 151 Pac. 441. The carrier of water is but the agent or trustee for others. The actual appropriator of the water is the party who puts it to beneficial use. Board v. Water Co., 102 Colo. 351, 79 P. (2d) 373. The appropriation is, in such cases, of course somewhat different from the appropriation made from a natural stream, but the appropriator must necessarily apply to the carrier for the water. Not being an independent appropriator from a stream, his rights are limited by his contract with the canal company as well as by the provisions of law. City and County of Denver v. Brown, 56 Colo. 216, 138 Pac. 44; 67 C. J. 1372 note 49 (a). The carrier

may by its contract require the water user to submit to reasonable regulations and limitations in the use of the water. Wright v. Platte Valley Irr. Co., 27 Colo. 322, 61 Pac. 663, 666. The water user, being the actual appropriator, must, of course, to complete his appropriation, put the water to beneficial use. As succinctly stated in Whiting v. Lyman Water Co., (Ariz.) 124 P. (2d) 317, "The right to delivery of the water by the owner of a canal or reservoir system depends entirely upon the right of appropriation held by the water user." See also Mellon v. Sugar Co., 21 Idaho 353, 122 Pac. 30; Ann. Cas. 1913 D 621; Gould v. Maricopa etc. Co., supra; Combs v. Ditch Co., supra. An appropriation by the water user from a canal, then, is just as essential for the purpose of acquiring a water right as it is for an appropriator from a stream. Even the doctrine of priority obtains in such case, as in others, (67 C. J. 1396; Combs v. Ditch Co., supra; Slosser v. Canal Co., 7 Ariz. 376, 65 Pac. 322, 340), unless, perchance, modified by provisions for pro-rating. In re of Umatilla River, 88 Ore. 376, 172 Pac. 97; O'Neill v. Canal Co., 39 Colo. 487, 90 Pac. 849; 67 C. J. 1403, Sec. 1075. The carrier has no right to dispose of, or permit the use of any more water from its canal than the capacity of its ditch and the amount of water at its disposal permits. Wyatt v. Irrigation Co., 18 Colo. 298, 33 Pac. 144, 149; Gould v. Maricopa etc. Co., supra; Olsen v. Irrigation Co., (Ariz.) 119 P. (2d) 549, 573; Souther et al. v. Flume Co., 121 Fed. 347; McDermont v. Water Co., 124 Cal. 112, 56 Pac. 779; Lanning v. Osborne, 76 Fed. 319; Gerner v. Irrigation Dist., 16 Ida. 1, 100 Pac. 80; Long on Irrigation (2nd ed.) 510. In 67 C. J. 1406 the rule is stated thus: "The sale of rights to a supply of water for irrigation should be restricted to that amount of land which the system of the distributor can reasonably supply, and where the applications for water exceed the capacity of the distribu-

tor's canal to furnish it, it is the duty of the distributor to limit the contracts to its capacity and to those users possessing the older rights of appropriation." See also 67 C. J. 1396. In Butte County Water Users' Ass'n., 185 Cal. 218, 196 Pac. 265, 269, the court used this language: "A water company supplying water for irrigation has not the power to take on new consumers without limit. Its power to supply water is, of course, limited by the amount of supply, and when the demands of its consumers upon it have reached this limit, it has no right to take on new consumers to the necessary injury of those it has." That appears to be a just rule, applicable alike in all cases, and shows, of course, that an owner of land lying under a canal has at best but a limited right to the water therein. It is apparent that the so-called Colorado doctrine is wholly repugnant to the contention that an appropriation for land can exist, against the common carrier, without any action whatever on the part of the land owner. A definite duty exists on the part of the common carrier, to give and distribute the water only to applicants as they come, and distribute no more than it has. And no owner of land can have any right to the water unless he appropriates and uses it for a beneficial purpose.

In other cases the sale for a lump sum of a perpetual water right by a ditch company, furnishing water for others, is recognized, which, of course, means that such right must be acquired by parties from and through the company, though, of course, it must be put to beneficial use within a reasonable time, the same as any other water. Stanislaus Water Co. v. Bachman, 152 Cal. 716, 93 Pac. 858, 864; 15 L. R. A. N. S. 359; San Diego Flume Co. v. Souther, 90 Fed. 164, 104 Fed. 706; Boise City Irrigation & Land Co. v. Turner, 176 Fed. 373; Clague v. Land Co., 84 Nebr. 499, 121 N. W. 570; Fenton v. Tri-State Land Co., 89 Nebr. 479, 131 N. W. 1038; Adamson v. Power & Irr. Co., 297 Fed. 905; 30

Am. Jur. 625. In fact, the only attack upon the contracts in most of these cases was made on the provision relating to the charges for the up-keep of the canal. In 67 C. J. 1411, it is stated that "a conveyance of a permanent right to receive a certain quantity of water for irrigation may be made, which conveyance amounts to the conveyance of an easement in the ditch or system furnishing the water, and such water right becomes appurtenant to and part of the land." See also 67 C. J. 1404. Wiel, Water Rights (3rd ed.) Sec. 1326 states that initial charges for permanent water rights are almost universally made. Illustrative of that are: Jackson v. Res. Ditch & Irr. Co., 16 Ida. 430, 101 Pac. 814; Hargrave v. Hall, 3 Ariz. 252, 73 Pac. 400; Idaho Fruit Land Co. v. Great Western Sugar Co., 18 Ida. 1, 107 Pac. 989; Souther v. Flume Co., 121 Fed. 347; Adamson v. Power & Irr. Co., supra; Dickenson v. Dick, 59 Colo. 593, 151 Pac. 441; Miller v. Hagerman Irr. Co., 20 N. Mex. 604, 151 Pac. 763; Madera etc. Co. v. K. Arkelian Inc., 103 Cal. App. 592, 284 Pac. 971; Allen v. R. R. Commission, 179 Cal. 65, 175 Pac. 466. In some of these cases the ditch company was a company situated similar to the Pioneer Canal Company. In Wyoming Central Irrigation Company v. Farlow, 19 Wyo. 68, 114 Pac. 635, it appears that the ditch company sold perpetual water rights for $20 an acre. Under the provisions of the Carey Act, water and ditch rights are sold by an initial charge, payable in a lump sum or in installments. Sections 91-707 and 720, Rev. St. 1931. Reclamation projects are on a similar footing. Wiel, supra, p. 1207.

It is apparent from what has been stated that from whatever standpoint we view the case, whether in the light of the so-called Colorado doctrine or any other, the owners of land under the Pioneer Canal could not, if the canal owner be regarded as a common carrier, any more than if regarded as a private corporation,

acquire a right to any part of the water by mere judicial fiat, and without doing anything whatever in connection with the acquisition thereof. Some acts of theirs were essential, including the application of the water to a beneficial purpose, and making an application to or purchase from the Pioneer Canal Company for the water right. We do not think, and cannot assume, that the court in the decree of adjudication of 1912, meant to disregard these vital rules of law, but must assume that whatever right it granted to the lands described in the decree, was subject to the observance thereof. No authority to the contrary has been cited to us, and none, we think, can, in the very nature of things, be found. Gifts are made in life, but aside from that, it is not usual that a "windfall" comes to the ordinary man without some action and effort on his part.

Again, the practical construction placed upon the decree by the interested parties is wholly inconsistent with the theory of plaintiffs herein advanced. Disregarding the 32 parties who have deeded rights from the Pioneer Canal—for the record does not show what they paid for their rights—after 1912, 58 different parties, as shown by the testimony, bought part of the capital stock of the Pioneer Canal Company, which gave them a water right in the waters adjudicated in favor of the company. The lands of most or all of these parties were described in the decree of 1912. The water rights sold in 1912 were sold for $12 per acre. The testimony does not show how much was paid for the rights bought thereafter, but it was probably not less than that paid in 1912. The water rights for 6814 acres of land, according to the testimony, are represented by stock, "each share representing a right for one acre of land," and if we figure that $12 per acre was paid for all of it, we find that the sum of over $80,000 was paid for rights which plaintiffs now claim have no value.

These rights would not have been bought, of course, except upon the theory that rights to the water flowing in the Pioneer Canal could be acquired only directly from and through the Pioneer Canal Company. Among the purchasers were at least eight of the plaintiffs herein, or their predecessors in interest. All the remaining plaintiffs herein, or their predecessors in interest, aside from Carlson, Krueger and Stewart (who claim no interest under the adjudication of 1912) bought rights in the Lake Hattie System, which, too, was evidently, or probably, done upon the theory that they had no other rights. All of the plaintiffs herein, accordingly, (the exception mentioned aside), or their predecessors in interest, construed the decree of 1912 to mean that no right could be acquired in the waters adjudicated for the Pioneer Canal, except from and through the Pioneer Canal Company. And no other or different rights were claimed prior to the commencement of this action. In fact the plaintiff Hurich (who only bought a few shares of stock in 1935) testified on the trial of this case, that he felt he had no right to the waters of the Pioneer Canal, but wanted to let the court decide. Taking all of the foregoing facts into consideration, it would seem to be clear that J. D., S. D., and Lillie S. Perkins, and the plaintiffs Matson and Schrader, have no rights in the Pioneer Canal, and that, hence, they lack a community of interest with those who have rights therein, and whom they purport to represent herein, including some of the plaintiffs herein. Their community of interest in that respect is no greater than that of the plaintiffs Carlson, Krueger and Stewart, who have none. We may add, that some of the rights from and through the Pioneer Canal Company were acquired many years ago. The deeded right of Helen Ryan apparently was acquired in the 1880's. A good deal of the stock was sold in 1912, thirty years ago. Most of the other stock was sold in 1917 and 1918,

and not later than 1920, outside of a few minor rights. The testimony in the record indicates that during all the years after the acquisition of the rights, except in years when there was a scarcity of water, the respective parties received each year water sufficient to irrigate their land for which the water right was bought, which would be approximately one cubic foot of water per second of time for each 70 acres. And whether we apply the doctrine of the statute of limitations or laches or estoppel, pleaded herein, or the combination of them, or the other rules of law herein stated, the fact remains that not a single equitable consideration would seem to justify the court in setting aside and holding for naught the rights thus acquired by purchase, and used and claimed during so many years, and that, doubtless, with the knowledge of each and every one who was interested. In fact, counsel for plaintiffs have taken an entirely inconsistent position. They pleaded the contractual rights which some of the plaintiffs obtained from the Pioneer Canal Company, and asked the performance thereof, while they now insist that they are worthless, or practically worthless.

Counsel for plaintiffs seem to think that a holding contrary to their theory herein advanced, would be inconsistent with our holding in Scherck v. Nichols, 55 Wyo. 4, 95 Pac. (2d) 74. In fact, the defendants, too, rely upon that case to sustain their contentions herein. The right in that case was acquired under the water laws of this state enacted since statehood, under which a water right is initiated by an application for a permit which describes the land. The land involved in that case was described in the application for a permit filed in that case with the State Engineer. The applicant did not own the land; nor was it shown that he had specific authority to initiate a water right on behalf of the owner; and it was contended by third parties that the application was void on that account. The statute

gives ample opportunity for the correction or change in the description of the land given in the application. But no change or correction was made, and it was held that, in so far as third parties, having no greater rights, were concerned, the applicant should be held to have acted as volunteer agent for the owner of the land, and that the intention was shown to so act. That case is no authority for upholding the contention of plaintiffs in this case. The water right in this case was initiated in territorial days. No permit was then required. No land on which irrigation was to take place was necessary to be described under Ch. 34, Laws of 1876, under which the canal company was organized, and under which it made the appropriation. The intention of the Pioneer Canal Company clearly was, as already indicated, to acquire the right for its own benefit, so as to dispose of it at a profit.

. III. In conclusion, a great deal is said in the briefs of the plaintiffs herein about the arbitrary conduct of the Pioneer Canal Company in refusing to deliver any water to anyone, though in desperate need, who did not purchase a right in the company for a lump sum, while, under prior decisions of this court we have said that no one should have a monopoly of the waters of this state. We should, perhaps, in view of the scarcity of water shown in the record, be remiss in our duty if we entirely ignored that argument and did not indicate our views in so far as may safely be done. We do not, however, think it proper to go beyond the apparent necessity of the situation. We do not, for instance, think it necessary, or proper, to decide whether or not the Pioneer Canal Company is a private corporation or a common carrier. We have already seen that a ditch company has no right to dispose of or permit the use of any more water than its water supply and the capac-

ity of the ditch permits. That is admitted by counsel for the defendants. If, then, we are correct in the statement heretofore made, that the present users of water on land under the Pioneer Canal have, seemingly at least, by grant and long usage (see Gould v. Maricopa Canal Co., supra, 76 Pac. 601) acquired a water right reasonably sufficient to irrigate the lands for which the rights were acquired, then it is clear that the first appropriation of 71.43 cu. ft. p. s. t. has long ago been exhausted, and that the Pioneer Canal Company should not grant any additional rights therein to anyone. But part of the second appropriation of 210.48 cubic feet appears still to be available, though subject to the rights of those who have acquired the right to the first appropriation. The amount still available does not appear. The record indicates that the canal is not able to carry the full amount of the appropriation. We do not think that the company has the right to arbitrarily refuse the use of whatever surplus exists, so long as it controls it. Such arbitrary refusal would be inconsistent not only with the general policy of the state, that all available water shall be put to a beneficial use, but would be in contravention of section 122-421 of the Rev. St. 1931 reading that "neither shall the owner or owners of such ditch, canal or reservoir have any right to receive from others any royalty for the use of the water carried thereby, but every such owner or owners having a surplus of water and furnishing the same to others from any ditch, canal or reservoir as herein provided, shall be considered common carriers and shall be subject to the same laws that govern common carriers." The provision appears to mean that, as under the so-called Colorado doctrine already mentioned, the user is not compelled to buy the right to the use of such surplus for a lump sum of money, but may be

charged only a reasonable amount annually. And it would seem to be clearly in the interest of the Pioneer Canal Company to permit the use of such surplus so that no abandonment thereof may be claimed against it. We leave undecided the question as to whether or not, after such use has been granted, the company may still thereafter dispose of such water by sale permanently and for a lump sum, since the question does not directly arise herein. It may not be amiss, in that connection, to state that the State Engineer of this state in his biennial report for 1907-1908, pp. 59 and 60, stated among other things as follows:

"The laws of Wyoming recognize ditches and canals as common carriers. * * * While in theory it might be considered possible for a canal to be successfully conducted as a common carrier, yet the history of the West and all the experience of irrigation authorities teach that unless the water user can obtain a permanent interest in the irrigation works in proportion to his water right, failure can be confidently anticipated. There is no reason why those building a canal or a reservoir should permanently control and own them. * * * If the law relating to canals as common carriers were to be carried into effect generally, it would be dangerous. As it stands, it is harmless, because it has been demonstrated to be a failure."

The same officer, in the biennial report of 1909-1910, p. 21, states that "it would seem much better to make the water rights attach to the land and establish the price which the water user is to pay for an interest in the irrigation work in the beginning." The State Engineer of Oregon reported about the same time: "Water having become appurtenant to land puts an end to the ownership of water by corporations and its sale for a yearly rental to those who use it. No more common carrier canals will therefore be constructed. Only water rights which convey a proportional interest in the

52

franchises and works can be sold by those who appropriate water in excess of their needs." See Wiel, supra, p. 1244.

It is apparent from what we have said that, for the reasons stated, the judgment of the trial court must be affirmed. It is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.